[No. 1773]

## THE STATE OF NEVADA, RESPONDENT, *v.* FRED SKINNER, APPELLANT.

1. HOMICIDE—DEGREE OF PROOF—SELF-DEFENSE.
   Under Comp. Laws, 4687, providing that, the homicide being proved, the burden of proving circumstances that justify or excuse it is on accused, while the burden of establishing self-defense is on accused, he is not required to do so beyond a reasonable doubt.

2. HOMICIDE—REVIEW—HARMLESS ERROR.
   Where an instruction, before modification by the court was the most important requested by defendant, and vital to his theory of self-defense, and the modification so changed it as to charge that such defense must be established by defendant beyond a reasonable doubt, the error was prejudicial.

APPEAL from the District Court of the Fifth Judicial District of the State of Nevada, Nye County; *J. P. O'Brien,* Judge.

Fred Skinner was convicted of murder in the first degree. From the judgment and an order denying a new trial, he appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Bartlett, Thatcher & Gibbons,* for Appellant.

*R. C. Stoddard,* Attorney-General, for Respondent:

I. "Competent evidence for the purpose of showing the existence of a motive for the commission of the offense charged, is none the less so because it is also proved the commission of another crime." (3 Rice on Evidence, 217, supported by *Pierson* v. *People,* 79 N. Y. 424; *Pontius* v. *People,* 82 N. Y. 339.) We have cited these authorities because appellant contends that crimes were proven other than the one charged in the indictment. The testimony as to the Manhattan affair and the introduction of the woman's

letter were not for the purpose of showing the commission of distinct crimes that were related to and connected with the crime alleged in the indictment, but for the purpose of showing the illicit relationship between the defendant and the deceased, and thereby showing a motive for the crime charged in the indictment. We contend that for either of the above purposes said testimony was admissible. In *People* v. *Young*, 102 Cal. 411, it is said: "A number of exceptions were taken to the rulings of the court admitting· evidence which showed to some extent the relation existing between appellant and the woman killed of man and mistress. It is contended that this evidence was inadmissible, because the effect of it was to bring appellant into disrepute, and affect his good standing before the jury. The evidence, however, necessarily appeared in the disclosure of facts pertaining to the.case, and we do not think that any error was committed in that regard, or that appellant was unjustly prejudiced· thereby."

II. "The mere lapse of time does not affect the *res gestæ*." (*Little's Case*, 25 Grat. 951; *Jordan's Case*, 25 Grat. 943; 1 Greenleaf, Ev. sec. 108.) "On a trial for murder it is proper to admit evidence of the previous relations existing between deceased and accused in explanation of their conduct and motives." '(21 Cyc. 912.) "Evidence to show the motive prompting the commission of the crime is relevant and admissible, notwithstanding it also shows the commission by the accused of another crime of a similar or dissimilar character." (12 Cyc. 410.)

III. Appellant vigorously contends that error was committed by the court in giving as an instruction the statutory law as to when a person may kill in self-defense. We submit that a statutory enactment may always be used as an instruction, if applicable to the case, provided that it does not infringe upon the constitutional or inherent rights of the defendant. There is nothing unreasonable or unjust about the instruction of which complaint is made. It does not say that the defendant must show that the killing was necessary or was absolutely necessary, but it says that it must appear absolutely necessary. "Absolutely" fixes the degree of necessity. In every case of real danger to the life or person of an individual

there is certainly an absolute necessity that he should kill in defense of his life or person, or at least there would appear to be an absolute necessity. The term "necessity" or "necessary" should be qualified and explained in some way. Certainly the term "slight necessity" or "possible necessity" would be a dangerous term to use. When the defendant is allowed to act upon appearances it is but just that appearances should be such that it would appear that the killing was absolutely necessary to protect life or person. The law should fix the kind of necessity that should appear, and not the individual actor in each case, and we believe it has been intelligently fixed in this state, by statutory enactment, and as to this we stand upon the statutory law. The argument of the district attorney was based upon the facts, and as to this there was no error.

By the Court, SWEENEY, J.:

Appellant was convicted of the crime of murder in the first degree, with penalty fixed by the jury at life imprisonment, upon an indictment charging him with the murder of one Sadie Isabel Heskett, at Rhyolite, in the County of Nye, on the 3d day of January, 1908. From the judgment, and from an order denying his motion for a new trial, an appeal is taken to this court.

A number of alleged prejudicial errors are urged upon the appeal, only one of which we deem necessary to consider. The proof showed that the defendant and the decedent were living together in an adulterous relationship in the said town of Rhyolite, and had been so living in other towns in this state and prior to their coming hereto. At the time of the homicide the decedent was a proprietress of a dance hall and the defendant a gambler by vocation. The homicide occurred about the hour of 3:30 in the morning and shortly after the return of the defendant to the home where the parties were living together. There were no witnesses to the homicide, other than the parties participating. During the altercation which resulted in the death of Mrs. Heskett, three bullets were fired into the body of the deceased and two into that of the defendant.

Upon the trial the defendant admitted firing the shots which killed the decedent, but interposed self-defense in justification.    Upon the part of the defendant some testimony was offered of prior threats by the deceased against his life in the event he should leave her or attempt so to do.    The defendant testified that on the night of the killing he told decedent that he was going to return to Colorado, which precipitated the altercation; that decedent, who had possession of his revolver, shot him twice; that he then took the revolver away from her, and she started to go to another part of the room, where defendant knew there was another revolver; and that thereupon he shot her, believing that his life was in danger.    This, in brief, is an outline of the defendant's case.    While there was some evidence offered of intoxication, defendant's main reliance was self-defense.    The testimony, upon both sides, presented a case for the jury to determine whether or not the homicide was justifiable.    It was of vital importance to the defendant's case that the jury be correctly instructed upon the law of self-defense.

After giving a number of instructions to the jury, upon the request of defendant, correctly defining the law of self-defense in the abstract, the court gave the following instruction: "If you believe from the evidence, *beyond a reasonable doubt*, that on the 3d day of January, 1908, and at the time of the shooting of the deceased, that Sadie Isabel Heskett made an assault, or was about to make an assault, upon the defendant, and that defendant believed, and that a reasonable man would under like circumstances and conditions have believed, that he was at the time in great and immediate danger of death, or of having great bodily harm inflicted upon him, by her, and if such appearances and circumstances were sufficient to excite the fears of a reasonable person, situate as defendant was, and if the defendant really acted under the influence of those fears, and not in a spirit of revenge, then I charge you that the defendant was justified in acting upon these appearances and in taking the life of deceased, and it is your duty, therefore, to acquit him." The instruction, with the exception of the words italicized, was the same as requested by defendant.    The trial judge, however, before giving the instruction,

inserted the words "beyond a reasonable doubt." The effect of this modification was to instruct the jury that the defendant must establish his defense to their satisfaction beyond a reasonable doubt.

That this is not the law is conceded by the attorney-general, and the proposition is too manifest to require the citation of authorities that a defendant, interposing self-defense, is not required to establish such a high degree of proof as will convince the jury beyond a reasonable doubt.

Section 33 of the crimes and punishments act (Comp. Laws, 4687) provides: "The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified, or excused in committing the homicide."

While the burden of establishing self-defense was upon the defendant, it has never been held that such defense must be established beyond a reasonable doubt. The state is required to establish the truth of the charge in the indictment to the satisfaction of the jury beyond a reasonable doubt, as that term is defined in the statute, and if such doubt exists the defendant is entitled to the benefit thereof. The practical effect of the instruction was to reverse the rule in this respect.

As this instruction, before modification, was the most important of all the instructions requested by defendant and was vital to his theory of the case, and as the modification thereof so changed the same as to give the jury an erroneous conception of the degree of proof required of the defendant to establish his case, we are bound to hold the same to constitute prejudicial error.

The judgment and order of the trial court appealed from are reversed, and the cause remanded for a new trial.